# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| JOSHUA YARBROUGH, and MATT LOFLAND, | § § § | |
| Individually and on Behalf of Others Similarly Situated, | § § § | Civil Action 4:19-cv-905 |
| *Plaintiffs,* | § § | |
| vs. | § § | **JURY DEMANDED** |
| CSS CORP., and GLOW NETWORKS, INC., | § § § | |
| *Defendants.* | § § | |

## PLAINTIFFS' SECOND AMENDED COMPLAINT AND JURY DEMAND

TO THE HONORABLE SEAN D. JORDAN:

Plaintiffs Joshua Yarbrough, Matt Lofland, Lee Green, Sterling Vicks, Joshua Walker, Michael Brown, Adawale Ashiru, Paul Tijani, Peter Tijani, Brandon Price, Harom Pringle, Osasu William Saigheyisi, Brett Samuels, and Rukevwe Ologban (Individually and as "Class Representatives")[1] present their Second Amended Complaint for unlawful discrimination and retaliation in violation of 42 U.S.C. § 1981 ("Section 1981").

---

[1] All of the Plaintiffs except for Matt Lofland are class representatives. Matt Lofland is proceeding individually on his retaliation claim.

## I.    NATURE OF THIS ACTION

1.    The Class Representatives, who worked for Defendants CSS Corp and Glow Networks, Inc. (jointly "Defendants") bring this action to redress race discrimination and retaliation for reporting and opposing race discrimination.

2.    The Class Representatives bring this action on behalf of themselves and all Africans and African Americans who were employed at Defendants for unlawful discrimination in violation of 42 U.S.C. § 1981 ("Section 1981") against Defendants. The Class Representatives also assert violations on their own behalf for unlawful retaliation under Section 1981 for reporting and opposing race discrimination.

3.    The Class Representatives seek to represent African and African American employees of Defendants who have been subjected to one or more aspects of the systemic race discrimination described in this Complaint, including, but not limited to: discriminatory policies, practices and procedures in selection, promotion and advancement; disparate pay; differential treatment; and racial hostility in the workplace. The systemic racial discrimination described in this Complaint has been, and is, continuing in nature.

4.    The Class Representatives are seeking, on behalf of themselves and the class they seek to represent, declaratory and injunctive relief; back

pay; front pay; compensatory, nominal and punitive damages; and attorneys' fees, costs and expenses to redress Defendants' pervasive and discriminatory employment policies, practices and procedures.

## II.    JURISDICTION AND VENUE

5.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(a)(4) and 28 U.S.C. § 1331. This is a discrimination suit authorized and instituted pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").

6.    Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(c) because Defendants are subject to personal jurisdiction, and reside in Texas.

7.    The Eastern District of Texas is the most logical forum in which to litigate the claims of the Class Representatives and the proposed class in this case. Plaintiffs worked at Defendants' facility in Collin County. Furthermore, the Class Representatives and many of the potential class members reside in all areas of the Eastern District of Texas.

## III.    PARTIES

### A.    Plaintiffs

8.    Plaintiff Joshua Yarbrough is a resident of Texas.

9.    Plaintiff Matt Lofland is a resident of Texas.

10.    Plaintiff Lee Green is a resident of Texas.

11.    Plaintiff Sterling Vicks is a resident of Texas.

12.    Plaintiff Joshua Walker is a resident of Texas.

13.    Plaintiff Michael Brown is a resident of Texas.

14.    Plaintiff Adawale Ashiru is a resident of Texas.

15.    Plaintiff Paul Tijani is a resident of Texas.

16.    Plaintiff Peter Tijani is a resident of Texas.

17.    Plaintiff Brandon Price is a resident of Texas.

18.    Plaintiff Harom Pringle is a resident of Texas.

19.    Plaintiff Osasu William Saigheyisi is a resident of Texas.

20.    Plaintiff Brett Samuels is a resident of Texas.

21.    Plaintiff Rukevwe Ologban is a resident of Texas.

**B.    Defendants**

22.    CSS Corp does business in the state of Texas and has appeared in the case.

23.    Glow Networks, Inc., is a Delaware corporation with its principal place of business in Dallas, Texas, and has appeared in the case.

## IV.   BACKGROUND FACTS

24.    CSS Corp is an IT and Technical Support Services company.

25.    Glow Networks, Inc., performs engineering, installation services, and consulting for telecommunications companies. Glow Networks, Inc., was acquired by CSS Corp in 2010.

26.     Class Representatives Joshua Yarbrough, Lee Green, Sterling Vicks, Joshua Walker, Michael Brown, Adawale Ashiru, Paul Tijani, Peter Tijani, Brandon Price, Harom Pringle, Osasu William Saigheyisi, Brett Samuels, and Rukevwe Ologban are African and African American and were subjected to race discrimination by Defendants.

27.     Plaintiff Lofland is white and was retaliated against after complaining about Defendants' mistreatment of Africans and African Americans.

28.     Defendants treated Africans and African Americans differently than other employees and subjected them to a hostile work environment.

29.     Defendants discharged Brandon Price, Michael Brown, Paul Tijani, Peter Tijani, Harom Pringle, Osasu William Saigheyisi, and Adawale Ashiru and constructively discharged Joshua Yarbrough, Matt Lofland, Lee Green, Joshua Walker, Sterling Vicks, Brett Samuels, and Rukevwe Ologban.

30.     Defendants had a pattern and practice of discrimination against African and African American employees.

31.     Defendants monitored and scrutinized Africans and African Americans more closely than non-African and non-African American employees.

32.     Class Representatives' work location had about eleven rooms. Only the front two rooms were monitored by cameras.

33.    The rooms had open seating, meaning that each employee could choose the desk or computer he sat at each day upon arriving to work.

34.    Defendants did not like it when Africans and African Americans sat together and began spreading them apart -- that is, requiring them to move to different desks.

35.    Defendants allowed non-Africans and non-African Americans to sit together.

36.    After installing surveillance cameras in the two front rooms, Defendants began assigning Africans and African Americans to the front two rooms where they would be in range of the cameras.

37.    Thirteen of the sixteen African and African American employees were moved to the front two rooms within range of the cameras.

38.    The majority of employees assigned to the front two rooms were African and African American.

39.    Africans and African Americans were written up or reprimanded for conduct which non-African and non-African American employees could engage in without penalty.

40.    Defendants required African and African American employees to inform management if the employee left their desk for any reason and would reprimand them if they failed to do so.

41.     Defendants also reprimanded African and African American employees if they were away from their desks for more than a couple of minutes whereas non-African and non-African American employees were generally not reprimanded for taking longer breaks.

42.     Defendants reprimanded African and African American employees for having their cell phones out whereas non-African and non-African American employees were generally not reprimanded for the same conduct.

43.     A manager would video or take photos of Africans and African Americans with their cell phones out and take the photos to Human Resources or management.

44.     The same manager did not do this to non-Africans and non-African Americans and would also use his own cellphone while at work without repercussion.

45.     Lofland, as team lead, had two African Americans on his team. The African Americans were removed from his team and a non-African and non-African American was placed on his team without Lofland's input.

46.     Lofland, as a team lead, recommended to his manager two well-deserving African American candidates for promotion. Neither of Lofland's recommendations received a promotion.

47.     Non-Africans and non-African Americans, some of whom Lofland had recommended against promotion because of lesser performance, were promoted.

48.     Yarbrough was a lead engineer, overseeing a group of employees.

49.     Defendants informed Yarbrough they were replacing him as lead engineer with a non-African and non-African American.

50.     Yarbrough's replacement had less tenure at the company and less telecommunications experience than Yarbrough.

51.     Yarbrough was informed he would be demoted to engineer in the group overseen by his replacement.

52.     Yarbrough resigned rather than accept the demotion. This amounts to constructive discharge.

53.     Other Class Representatives were treated similarly to Yarbrough.

54.     Because of Defendant's policy of discrimination, Brandon Price, Michael Brown, Paul Tijani, Peter Tijani, Harom Pringle, Osasu William Saigheyisi, and Adawale Ashiru were terminated because of their race.

55.     Rather than accept hostile treatment and retaliation, Joshua Yarbrough, Matt Lofland, Lee Green, Joshua Walker, Sterling Vicks, Brett Samuels, and Rukevwe Ologban resigned rather than accept the adverse treatment. This amounts to constructive discharge.

56.     During layoffs, Defendants informed employees the layoffs would be based on seniority with the company. However, a high performing African and African American employees were laid off. A non-African and non-African American who had less seniority than many if not all of the Africans and African Americans was not laid off.

57.     Lofland's project manager told Lofland that Human Resources instructed the manager: "Don't lay off any white people."

58.     Lofland reported and opposed racial discrimination. He complained to his project manager about Defendants' mistreatment of Africans and African Americans, including that they were passed over for promotion and that Africans and African Americans were assigned to the front rooms in range of cameras.

59.     When Lofland's project manager informed Human Resources of Lofland's complaints, the project manager was told he should fire Lofland.

60.     Less than two weeks after Lofland reported and opposed the racial discrimination against African and African American employees, Defendants demoted Lofland from Tier 2 Team Lead to Tier 1 Site Migration.

61.     Lofland was replaced by a non-African and non-African American with less tenure at the company and less telecommunications experience than Lofland.

62.     Lofland resigned the same week rather than accept the demotion. This amounts to constructive discharge.

63.     Other, and possibly all, African and African American employees were subjected to the same hostile work environment and pattern and practice of discrimination as described above.

## V.     CLASS ACTION ALLEGATIONS

### A.     Class Definition

64.     The Class Representatives seek to maintain claims on their own behalf and on behalf of a class of current and former employees of Defendants. Each of the Class Representatives is a member of a class.

65.     One class consists of African and African Americans who are, or have been, employed by Defendants and have experienced race discrimination at any time during the applicable liability period or have experienced retaliation for reporting or opposing race discrimination. Joshua Yarbrough, Lee Green, Sterling Vicks, Joshua Walker, Michael Brown, Adawale Ashiru, Paul Tijani, Peter Tijani, Brandon Price, Harom Pringle, Osasu William Saigheyisi, Brett Samuels, and Rukevwe Ologban as Class Representatives, are representative of the class. Upon information and belief, there are several hundred members of the proposed class.

**B.      Efficiency of Class Prosecution of Common Claim**

66.      Certification of a class of employees similarly situated to the Class Representatives is the most efficient and economical means of resolving the questions of law and fact which are common to the claims of the Class Representatives and the proposed class. The individual claims of the Class Representatives require resolution of the common question of whether Defendants have engaged in a systemic pattern or practice of race discrimination against African and African American employees or of retaliation for reporting or opposing race discrimination. The Class Representatives seek remedies to eliminate the adverse effects of such discrimination in their own lives, careers and working conditions and in the lives, careers and working conditions of the proposed class members, and to prevent continued racial discrimination and retaliation in the future. The Class Representatives have standing to seek such relief because of the adverse effect that such discrimination has had on them individually, and on Africans and African Americans and those who opposed or reported racial discrimination, generally.

67.      To gain such relief for themselves, as well as for the putative class members, the Class Representatives will first establish the existence of systemic racial discrimination and retaliation as the premise for the relief they seek. Without class certification, the same evidence and issues would be

subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations. Certification of the proposed class of Africans and African-Americans and those who have reported or opposed racial discrimination who have been affected by these common questions of law and fact is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve the questions for the Class Representatives, the proposed class, and Defendants.

68.    The Class Representatives' individual and class claims are premised upon the traditional bifurcated method of proof and trial for disparate impact and systemic disparate treatment claims of the type at issue in this case. A bifurcated method of proof and trial is the most efficient method of resolving such common issues.

## C.    Numerosity and Impracticality of Joinder

69.    The class which the Class Representatives seek to represent is too numerous to make joinder practicable. The proposed class consists of hundreds if not thousands, of current, former, and African and African American employees and those who opposed or reported race discrimination during the liability period.

### D.      Common Questions of Law and Fact

70.      The prosecution of the claims of the Class Representatives will require the adjudication of numerous questions of law and fact common to both their individual claims and those of the putative class they seek to represent. The common questions of law include, inter alia, whether Defendants have engaged in unlawful, systemic race discrimination and retaliation in its selection, promotion, advancement, transfer, training, and discipline policies, practices or procedures, and in the general terms and conditions of work and employment; whether Defendants are liable for a continuing systemic violation of Section 1981; and a determination of the proper standards for proving a pattern or practice of discrimination or retaliation by Defendants against its African and African American employees or those who oppose or report racial discrimination.

71.      The common questions of fact would include, inter alia: whether Defendants have, through its policies, practices or procedures, (a) denied or delayed the promotion of Africans and African Americans or those who opposed or reported racial discrimination; (b) precluded Africans and African Americans from eligibility for promotions by denying them training which employees who are not African and African American or those who did not oppose or report racial discrimination are granted; (c) paid Africans and African Americans or those who opposed or reported racial discrimination at

a disparate level; (d) subjected Africans and African Americans or those who opposed or reported racial discrimination to differential treatment, including, but not limited to, less preferable work assignments, inequitable evaluations and stricter disciplinary policies, practices or procedures; and (e) subjected Africans and African Americans or those who opposed or reported racial discrimination to hostility or a hostile work environment.

72.     The employment policies, practices and procedures to which the Plaintiffs and the class members are subject are set at Defendants' corporate level and apply universally to all class members throughout the world. These employment policies, practices and procedures are not unique or limited to any one department; rather, they apply to all departments, and, thus, affect the Class Representatives and proposed class members in the same ways no matter the district, division, or position in which they work.

73.     Throughout the liability period, a disproportionately large percentage of the managers and supervisors at Defendants have not been African and African American or those who oppose or report race discrimination.

74.     Discrimination in selection, promotion and advancement occurs as a pattern and practice throughout all levels and all divisions of Defendants. Selection, promotion, and advancement opportunities are driven by personal familiarity, subjective decision-making, preselection and

interaction between non-African and non-African American managers, supervisors, and subordinates and those who have not opposed or reported retaliation rather than by merit or equality of opportunity. As a result, employees who are not African and African American or who have not opposed or reported race discrimination have advanced and continue to advance more rapidly to better and higher paying jobs than do African and African American employees or those who opposed or reported racial discrimination.

75.     Defendants' policies, practices and procedures have had an adverse impact on Africans and African Americans or those who opposed or reported racial discrimination seeking selection for, or advancement to, better and higher paying positions. In general, a higher level of job classification correlates with a lower percentage of African and African American or those who opposed or reported racial discrimination employees holding those positions. The adverse impact is based on, results from, and is caused by intentional discrimination.

### E.     Typicality of Claims and Relief Sought

76.     The claims of the Class Representatives are typical of the claims of the proposed class. The Class Representatives assert claims in each of the categories of claims they asserted on behalf of the proposed classes. The relief sought by the Class Representatives for race discrimination or those who

opposed or reported racial discrimination complained of herein is also typical of the relief which is sought on behalf of the proposed classes.

77.     The Class Representatives are, like the members of the proposed classes, employees who have worked for the Defendants during the liability period.

78.     Discrimination in selection, promotion, advancement, and training affects the compensation of the Class Representatives and all the class members in the same ways.

79.     Differential treatment between employees based on race or those who opposed or reported racial discrimination occurs as a pattern and practice throughout all levels and departments of Defendants. Defendants predominantly hold Africans and African Americans employees and those employees who opposed or reported racial discrimination, including both the Class Representatives and class members, to stricter standards than employees who are not African and African American or those who opposed or reported racial discrimination, and, thus, African and African American employees or those who opposed or reported racial discrimination often receive lower performance appraisals than others for performing at the same level. African and African American employees and those who opposed or reported racial discrimination are also disciplined, formally and informally, more frequently and severely than their counterparts who are not African

and African American. Additionally, employees who are not African and African American or those who opposed or reported racial discrimination more often receive preferable work assignments and other preferential treatment.

80.     Discrimination in the form of a hostile work environment occurs as a pattern and practice throughout all levels and departments of Defendants and affects the Class Representatives and the members of the class in the same ways. Supervisors and employees have made racially hostile comments; harassed and intimidated African and African American employees and those who opposed or reported racial discrimination; made it clear in various ways that they favor employees who are not African and African American or those who opposed or reported racial discrimination; and otherwise have created a working environment hostile to African and African American employees or those who opposed or reported racial discrimination.

81.     The Class Representatives, and other employees, have complained to Defendants' management and Human Resources about race discrimination and a racially hostile work environment, as well as retaliation for those who opposed or reported racial discrimination. Company investigations into these complaints have been inadequate or superficial.

82.     The Class Representatives and the class members have been affected in the same ways by Defendants' failure to implement adequate

procedures to detect, monitor, and correct this pattern and practice of discrimination.

83.     Defendants have failed to create adequate incentives for its managers to comply with equal employment opportunity laws regarding each of the employment policies, practices and procedures referenced in this Complaint and have failed to discipline adequately its managers and other employees when they violate the anti-discrimination and anti-retaliation laws. These failures have affected the Class Representatives and the class members in the same ways.

84.     The relief necessary to remedy the claims of the Class Representatives is exactly the same as that necessary to remedy the claims of the proposed class members in this case. The Class Representatives seek the following relief for their individual claims and for those of the members of the proposed class: (a) a declaratory judgment that Defendants have engaged in systemic racial discrimination against African and African American employees and those who opposed or reported racial discrimination by limiting their ability to be promoted to better and higher paying positions, limiting their employment opportunities to lower and less desirable classifications, limiting their training and transfer opportunities, exposing them to differential treatment, and subjecting them to hostility at work; (b) a permanent injunction against such continuing discriminatory or retaliatory

conduct; (c) injunctive relief which effects a restructuring of Defendants'
promotion, transfer, training, performance evaluation, compensation, work
environment, and discipline policies, practices and procedures so that
Africans and African Americans or those who opposed or reported racial
discrimination will be able to compete fairly in the future for promotions,
transfers, and assignments to better and higher paying classifications with
terms and conditions of employment traditionally enjoyed by other
employees; (d) injunctive relief which effects a restructuring of the
Defendants' workforce so that Africans and African Americans or those who
opposed or reported racial discrimination are promoted into higher and better
paying classifications which they would have held in the absence of
Defendants' past racial discrimination or retaliation; (e) back pay, front pay,
and other equitable remedies necessary to make African and African-
American employees and those who opposed or reported racial discrimination
whole from the Defendants' past discrimination; (f) compensatory damages;
(g) punitive and nominal damages to prevent and deter Defendants from
engaging in similar discriminatory or retaliatory practices in the future; and
(h) attorneys' fees, costs and expenses.

### F.   Adequacy of Representation

85.   The Class Representatives' interests are co-extensive with those
of the members of the proposed class which they seek to represent in this

case. The Class Representatives seek to remedy Defendants' discriminatory and retaliatory employment policies, practices and procedures so that Africans and African Americans will no longer be prevented from advancing into higher paying and more desirable positions, will not receive disparate pay and differential treatment, and will not be subjected to racial hostility at work.

86.     The Class Representatives are willing and able to represent the proposed class fairly and vigorously as they pursue their similar individual claims in this action. The Class Representatives have retained counsel who are qualified, experienced, and able to conduct this litigation and to meet the time and fiscal demands required to litigate an employment discrimination class action of this size and complexity. The combined interests, experience, and resources of the Class Representatives and their counsel to litigate competently the individual and class claims at issue in this case clearly satisfy the adequacy of representation requirement of Federal Rule of Civil Procedure 23(a)(4).

## VI.   CLASS CLAIMS

87.     The Class Representatives and the putative class they seek to represent have been subjected to a systemic pattern and practice of race discrimination or retaliation involving a battery of practices which have also had an unlawful, disparate impact on them and their employment

opportunities. The discrimination includes adhering to a policy and practice of restricting the promotion and advancement opportunities of African and African American employees so that they remain in the lower classification and compensation levels, as well as terminating Africans and African Americans because of their race. Defendants in effect bar Africans and African Americans from better and higher paying positions which have traditionally been held by other employees and selectively terminate their employment. The systemic means of accomplishing such racial gender stratification include, but are not limited to, Defendants' promotion, training and performance evaluation policies, practices and procedures.

88.     Defendants' promotion, advancement, training, and performance evaluation policies, practices and procedures incorporate the following discriminatory practices: (a) relying upon subjective judgments, procedures, and criteria which permit and encourage the incorporation of racial stereotypes and bias by Defendants' predominately non-African and non-African American managerial and supervisory staff in making promotion, training, performance evaluation, compensation, and termination decisions; (b) refusing or failing to provide equal training opportunities to Africans and African Americans; (c) refusing or failing to provide Africans and African Americans with opportunities to demonstrate their qualifications for advancement; (d) refusing or failing to establish and follow policies, practices,

procedures, or criteria that reduce or eliminate disparate impact or intentional racial bias; (e) using informal, subjective selection methods which allow for rampant racial discrimination; (f) disqualifying African and African American employees for vacancies by unfairly disciplining them; (g) discouraging applications and expressions of interest by Africans and African Americans; (h) penalizing employees for exercising the rights afforded to them by Section 1981; (i) subjecting Africans and African Americans to racial hostility in the work environment; and (j) selectively terminating the employment of Africans and African Americans.

89.     Defendants' promotion policies, practices and procedures have had a disparate impact on the Class Representatives and the class members. The policies, practices, and procedures are not valid, job-related, or justified by business necessity. There are alternative objective and more valid selection procedures available to the Defendants that are more closely related to the actual responsibilities of the positions, and which would have less of a disparate impact on Africans and African Americans. However, the Defendants have failed to use or have refused to use such alternative procedures.

90.     Defendants' promotion, training, performance evaluation, compensation, and transfer policies, practices and procedures are intended to have a disparate impact on the Class Representatives and the class they seek

to represent. The practices form a part of the Defendants' overall pattern and practice of keeping Africans and African Americans in the lower classifications which have fewer desirable terms and conditions of employment and causing termination of their employment.

91.    Because of Defendants' systemic pattern and practice of racial discrimination, the Class Representatives and class they seek to represent have been adversely affected and have experienced harm, including the loss of compensation, wages, back pay, and employment benefits. This pattern and practice of gender discrimination includes: being denied promotions in favor of equally or less qualified non-African and non-African American employees; being denied training opportunities provided to non-African and non-African American employees; receiving lower performance appraisals for performing the same work at the same level as non-African and non-African American employees; being disciplined more frequently and more severely than non-African and non-African American employees, including being disciplined for engaging in behaviors for which non-African and non-African American employees are not disciplined; being subjected to a hostile work environment; and being terminated.

92.    The Class Representatives and the class they seek to represent have been subjected to racial hostility or retaliation at work, both severe and pervasive, which affects the terms and conditions of their employment. The

Defendants' actions and inactions encourage this behavior by its non-African and non-African American employees.

93.     The individual Plaintiffs have no plain, adequate, or complete remedy at law to redress the rampant and pervasive wrongs alleged herein, and this suit is their only means of securing adequate relief. The Plaintiffs are now suffering irreparable injury from Defendants' unlawful policies, practices and procedures as set forth herein, and will continue to suffer unless those policies, practices and procedures are enjoined by this Court.

## VII.   CAUSE OF ACTION (Section 1981)

94.     Plaintiffs allege that Defendants have discriminated and retaliated against the Class Representatives and all members of the proposed class by treating them differently from and less preferably than similarly situated non-African and non-African American employees and subjecting them to discriminatory denials of promotions, discriminatory denials of pay raises, discriminatory performance evaluations, discriminatory subjection to disciplinary procedures, disparate terms and conditions of employment, harassment, hostile work environments, termination, and other forms of discrimination in violation of Section 1981.

95.     Defendants' conduct has been disparate, intentional, deliberate, willful and conducted in callous disregard of the rights of the Class Representatives and the members of the proposed class.

96.     Defendants' policies and practices have produced a disparate impact against the Class Representatives and the class members with respect to the terms and conditions of employment that are based upon, result from, and are caused by intentional discrimination.

97.     By reason of the continuous nature of Defendants' discriminatory conduct, persistent throughout the employment of the Class Representatives and class members, the Class Representatives and class members are entitled to application of the continuing violation doctrine to all of the violations alleged herein.

98.     By reason of the discrimination suffered at Defendants, the Class Representatives and the members of the proposed class are entitled to all legal and equitable remedies available under Section 1981.

99.     Individual Plaintiffs may be entitled to damages for retaliation and injunctive relief.

## JURY DEMAND

100.    The Class Representatives request a trial by jury to the extent allowed by law.

WHEREFORE, the Class Representatives, on behalf of themselves and the members of the class whom they seek to represent, request the following relief:

A. Certification of the case as a class action maintainable under Federal Rules of Civil Procedure 23(a), (b)(2) or (b)(3), on behalf of the proposed Plaintiff class, and designation of the Plaintiffs as representatives of this class and their counsel of record as class counsel;

B. Declaratory judgment that Defendants' employment policies, practices and/or procedures challenged herein are illegal and in violation of Section 1981;

C. A permanent injunction against Defendants and their partners, officers, owners, agents, successors, employees and representatives and any and all persons acting in concert with them, from engaging in any further unlawful practices, policies, customs, usages, gender discrimination by the Defendants as set forth herein;

D. An Order requiring Defendants to initiate and implement programs that (i) will provide equal employment opportunities for African and African American employees; (ii) will remedy the effects of the Defendants' past and present unlawful employment policies, practices or procedures; and (iii) will eliminate the continuing effects of the discriminatory and retaliatory practices described.

E. An Order requiring the Defendants to initiate and implement systems of assigning, training, transferring, compensating, and promoting African and African American employees in a non-discriminatory manner;

F. An Order establishing a task force on equality and fairness to determine the effectiveness of the programs described in (B) through (E) above, which would provide for (i) monitoring, reporting, and retaining of jurisdiction to ensure equal employment opportunity, (ii) the assurance that injunctive relief is properly implemented, and (iii) a quarterly report setting forth information relevant to the determination of the effectiveness of the programs described in (B) through (E), above;

G. An Order placing or restoring the Class Representatives and the class members into those jobs they would now be occupying, but for Defendants' discriminatory policies, practices or procedures;

H. An Order directing Defendants to adjust the wage rates and benefits for the Class Representatives and the class members to the level that they would be enjoying but for the Defendants' discriminatory policies, practices and/or procedures;

I. An award of back pay, front pay, lost benefits, preferential rights to jobs and other damages for lost compensation and job benefits suffered by the Class Representatives and the class members to be determined at trial;

J. Any other appropriate equitable relief to the Class Representatives and proposed class members;

K. An award of compensatory, nominal and punitive damages to Plaintiffs;

L. An award of litigation costs and expenses, including reasonable attorneys' fees, to the Plaintiffs and class members;

M. Pre-judgment interest;

N. Such other and further relief as the Court may deem just and proper; and

O. Retention of jurisdiction by the Court until such time as the Court is satisfied that the Defendants have remedied the practices complained of herein and are determined to be in full compliance with the law.

Respectfully submitted,

*/s/ Brian Sanford*
Brian Sanford
Texas Bar No. 17630700
bsanford@sanfordfirm.com
David Norris
Texas Bar No. 24060934
dnorris@sanfordfirm.com
Elizabeth "BB" Sanford
Texas Bar No. 24100618
esanford@sanfordfirm.com

**THE SANFORD FIRM**
1910 Pacific Ave., Suite 15400
Dallas, TX 75201
Ph:  (214) 717-6653
Fax: (214) 919-0113

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of this document has been served via electronic filing on May 27, 2020, to counsel of record.

<u>  /s/   *Brian P. Sanford*</u>