# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| JOSHUA YARBROUGH, § <br> and MATT LOFLAND, ET AL., § <br> § <br> *Plaintiffs*, § <br> § <br> vs. § <br> § <br> CSS CORP., and § <br> GLOW NETWORKS, INC., § <br> § <br> *Defendants*. § | Civil Action 4:19-cv-905 <br><br> **JURY DEMANDED** |

### PLAINTIFFS' FORTH AMENDED
### COMPLAINT AND JURY DEMAND

TO THE HONORABLE SEAN D. JORDAN:

Plaintiffs Joshua Yarbrough, Matt Lofland, Lee Green, Sterling Vicks, Joshua Walker, Michael Brown, Adawale Ashiru, Paul Tijani, Peter Tijani, Brandon Price, Harom Pringle, Osasu William Saigheyisi, Brett Samuels, and Rukevwe Ologban present their Forth Amended Complaint for unlawful discrimination and retaliation in violation of 42 U.S.C. § 1981 ("Section 1981").

### I.    NATURE OF THIS ACTION

1.    Plaintiffs, who worked for Defendants CSS Corp and Glow Networks, Inc. (jointly "Defendants"), bring this action to redress race discrimination and retaliation for reporting and opposing race discrimination.

2.      Plaintiffs, with the exception of Matt Lofland, bring this action for unlawful discrimination in violation of 42 U.S.C. § 1981 ("Section 1981") against Defendants.

3.      Matt Lofland, Adawale Ashiru, Brett Samuels, Paul Tijani, Peter Tijani, Joshua Walker, and Osasu William Saigheyisi also assert violations for unlawful retaliation under Section 1981 for reporting and opposing race discrimination.

4.      Plaintiffs, other than Matt Lofland, are African and African American employees of Defendants who have been subjected to one or more aspects of the systemic race discrimination described in this Complaint, including, but not limited to: discriminatory policies, practices and procedures in selection, promotion and advancement; disparate pay; differential treatment; and racial hostility in the workplace. The systemic racial discrimination described in this Complaint has been, and is, continuing in nature.

5.      Plaintiffs seek declaratory and injunctive relief; back pay; front pay; compensatory, nominal and punitive damages; and attorneys' fees, costs and expenses to redress Defendants' pervasive and discriminatory employment policies, practices and procedures.

## II. JURISDICTION AND VENUE

6. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(a)(4) and 28 U.S.C. § 1331. This is a discrimination suit authorized and instituted pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").

7. Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(c) because Defendants are subject to personal jurisdiction, and reside in Texas.

8. The Eastern District of Texas is the most logical forum in which to litigate the claims of Plaintiffs in this case. Plaintiffs worked at Defendants' facility in Collin County. Furthermore, Plaintiffs reside in all areas of the Eastern District of Texas.

## III. PARTIES

### A. Plaintiffs

9. Plaintiff Joshua Yarbrough is a resident of Texas.

10. Plaintiff Matt Lofland is a resident of Texas.

11. Plaintiff Lee Green is a resident of Texas.

12. Plaintiff Sterling Vicks is a resident of Texas.

13. Plaintiff Joshua Walker is a resident of Texas.

14. Plaintiff Michael Brown is a resident of Texas.

15. Plaintiff Adawale Ashiru is a resident of Texas.

16. Plaintiff Paul Tijani is a resident of Texas.

17. Plaintiff Peter Tijani is a resident of Texas.

18. Plaintiff Brandon Price is a resident of Texas.

19. Plaintiff Harom Pringle is a resident of Texas.

20. Plaintiff Osasu William Saigheyisi is a resident of Texas.

21. Plaintiff Brett Samuels is a resident of Texas.

22. Plaintiff Rukevwe Ologban is a resident of Texas.

**B.    Defendants**

23. CSS Corp does business in the state of Texas and has appeared in the case.

24. Glow Networks, Inc., is a Delaware corporation with its principal place of business in Dallas, Texas, and has appeared in the case.

## IV.    BACKGROUND FACTS

25. CSS Corp is an IT and Technical Support Services company.

26. Glow Networks, Inc., performs engineering, installation services, and consulting for telecommunications companies. Glow Networks, Inc., was acquired by CSS Corp in 2010.

27. Plaintiffs Joshua Yarbrough, Lee Green, Sterling Vicks, Joshua Walker, Michael Brown, Adawale Ashiru, Paul Tijani, Peter Tijani, Brandon Price, Harom Pringle, Osasu William Saigheyisi, Brett Samuels, and

Rukevwe Ologban are African and African American and were subjected to race discrimination by Defendants.

28. Plaintiff Matt Lofland is white and was retaliated against after complaining about and opposing Defendants' mistreatment of Africans and African Americans.

29. Plaintiffs Adawale Ashiru, Brett Samuels, Paul Tijani, Peter Tijani, Joshua Walker, and Osasu William Saigheyisi were retaliated against after complaining about and opposing mistreatment of African and African Americans.

30. Defendants treated Africans and African Americans differently than other employees and subjected them to a hostile work environment.

31. Defendants discharged Brandon Price, Michael Brown, Paul Tijani, Peter Tijani, Harom Pringle, Osasu William Saigheyisi, and Adawale Ashiru and constructively discharged Joshua Yarbrough, Matt Lofland, Lee Green, Joshua Walker, Sterling Vicks, Brett Samuels, and Rukevwe Ologban.

32. Defendants had a pattern and practice of discrimination against African and African American employees.

33. Defendants monitored and scrutinized Africans and African Americans more closely than non-African and non-African American employees.

34. Plaintiffs' work location had about eleven rooms. Only the front two rooms were monitored by cameras.

35. The rooms had open seating, meaning that each employee could choose the desk or computer he sat at each day upon arriving to work.

36. Defendants did not like it when Africans and African Americans sat together and began spreading them apart -- that is, requiring them to move to different desks.

37. Defendants allowed non-Africans and non-African Americans to sit together.

38. After installing surveillance cameras in the two front rooms, Defendants began assigning Africans and African Americans to the front two rooms where they would be in range of the cameras.

39. Thirteen of the sixteen African and African American employees were moved to the front two rooms within range of the cameras.

40. The majority of employees assigned to the front two rooms were African and African American.

41. Africans and African Americans were written up or reprimanded for conduct which non-African and non-African American employees could engage in without penalty.

42. Defendants required African and African American employees to inform management if the employee left their desk for any reason and would reprimand them if they failed to do so.

43. Defendants also reprimanded African and African American employees if they were away from their desks for more than a couple of minutes whereas non-African and non-African American employees were generally not reprimanded for taking longer breaks.

44. Defendants reprimanded African and African American employees for having their cell phones out whereas non-African and non-African American employees were generally not reprimanded for the same conduct.

45. A manager would video or take photos of Africans and African Americans with their cell phones out and take the photos to Human Resources or management.

46. The same manager did not do this to non-Africans and non-African Americans and would also use his own cellphone while at work without repercussion.

47. Lofland, as team lead, had two African Americans on his team. The African Americans were removed from his team and a non-African and non-African American was placed on his team without Lofland's input.

48. Lofland, as a team lead, recommended to his manager two well-deserving African American candidates for promotion. Neither of Lofland's recommendations received a promotion.

49. Non-Africans and non-African Americans, some of whom Lofland had recommended against promotion because of lesser performance, were promoted.

50. Yarbrough was a lead engineer, overseeing a group of employees.

51. Defendants informed Yarbrough they were replacing him as lead engineer with a non-African and non-African American.

52. Yarbrough's replacement had less tenure at the company and less telecommunications experience than Yarbrough.

53. Yarbrough was informed he would be demoted to engineer in the group overseen by his replacement.

54. Yarbrough resigned rather than accept the demotion. This amounts to constructive discharge.

55. Other Plaintiffs were treated similarly to Yarbrough.

56. Shortly before termination, Adawale Ashiru complained of discrimination to his manager and to the Human Resources Department. Mr. Ashiru's manager told Mr. Ashiru not to worry about the disparate treatment.

57. Shortly before termination, Brett Samuels complained of discrimination to one of his supervisors, who did not take any action. Mr. Samuels went to the Human Resources Department that same day to address the issue. Human Recourses Department failed to take any action.

58. Shortly before termination, Peter and Paul Tijani complained to their managers and Human Resources multiple times, formally and informally.

59. Shortly before termination, Joshua Walker reported discrimination to his manager, Sandeep.

60. Shortly before termination, Osasu William Saigheyisi reported discrimination to his managers.

61. Because of Defendant's policy of discrimination, Brandon Price, Michael Brown, Paul Tijani, Peter Tijani, Harom Pringle, Osasu William Saigheyisi, and Adawale Ashiru were terminated because of their race.

62. Rather than accept hostile treatment and retaliation, Joshua Yarbrough, Matt Lofland, Lee Green, Joshua Walker, Sterling Vicks, Brett Samuels, and Rukevwe Ologban resigned rather than accept the adverse treatment. This amounts to constructive discharge.

63. During layoffs, Defendants informed employees the layoffs would be based on seniority with the company. However, high performing African and African American employees were laid off. A non-African and non-

African American who had less seniority than many if not all of the Africans and African Americans was not laid off.

64. Lofland's project manager told Lofland that Human Resources instructed the manager: "Don't lay off any white people."

65. Lofland reported and opposed racial discrimination. He complained to his project manager about Defendants' mistreatment of Africans and African Americans, including that they were passed over for promotion and that Africans and African Americans were assigned to the front rooms in range of cameras.

66. When Lofland's project manager informed Human Resources of Lofland's complaints, the project manager was told he should fire Lofland.

67. Less than two weeks after Lofland reported and opposed the racial discrimination against African and African American employees, Defendants demoted Lofland from Tier 2 Team Lead to Tier 1 Site Migration.

68. Lofland was replaced by a non-African and non-African American with less tenure at the company and less telecommunications experience than Lofland.

69. Lofland resigned the same week rather than accept the demotion. This amounts to constructive discharge.

70. Other, and possibly all, African and African American employees were subjected to the same hostile work environment and pattern and practice of discrimination as described above.

## V.   CAUSE OF ACTION (Section 1981)

71. Plaintiffs other than Lofland allege that Defendants have discriminated and retaliated against them by treating them differently from and less preferably than similarly situated non-African and non-African American employees and subjecting them to discriminatory denials of promotions, discriminatory denials of pay raises, discriminatory performance evaluations, discriminatory subjection to disciplinary procedures, disparate terms and conditions of employment, harassment, hostile work environments, termination, and other forms of discrimination in violation of Section 1981.

72. Lofland, Ashiru, Samuels, Paul Tijani, Peter Tijani, Walker, and Saigheyisi allege that Defendants retaliated against him for reporting and opposing race discrimination.

73. Defendants' conduct has been disparate, intentional, deliberate, willful and conducted in callous disregard of the rights of Plaintiffs.

74. Defendants' policies and practices have produced a disparate impact against Plaintiffs with respect to the terms and conditions of

employment that are based upon, result from, and are caused by intentional discrimination.

75. By reason of the continuous nature of Defendants' discriminatory conduct, persistent throughout the employment of Plaintiffs, Plaintiffs are entitled to application of the continuing violation doctrine to all of the violations alleged herein.

76. By reason of the discrimination suffered at Defendants, Plaintiffs are entitled to all legal and equitable remedies available under Section 1981.

77. Plaintiffs may be entitled to damages for retaliation and injunctive relief.

## JURY DEMAND

78. Plaintiffs request a trial by jury to the extent allowed by law.

WHEREFORE, Plaintiffs request the following relief:

A. Declaratory judgment that Defendants' employment policies, practices and/or procedures challenged herein are illegal and in violation of Section 1981;

B. A permanent injunction against Defendants and their partners, officers, owners, agents, successors, employees and representatives and any and all persons acting in concert with them, from engaging in any further unlawful practices, policies, customs, usages, and race discrimination and retaliation by the Defendants as set forth herein;

C. An Order requiring Defendants to initiate and implement programs that (i) will provide equal employment opportunities for African and African American employees; (ii) will remedy the effects of the Defendants' past and present unlawful employment policies, practices or procedures; and (iii) will eliminate the continuing effects of the discriminatory and retaliatory practices described.

D. An Order requiring the Defendants to initiate and implement systems of assigning, training, transferring, compensating, and promoting African and African American employees in a non-discriminatory manner;

E. An Order establishing a task force on equality and fairness to determine the effectiveness of the programs described in (A) through (D) above, which would provide for (i) monitoring, reporting, and retaining of jurisdiction to ensure equal employment opportunity, (ii) the assurance that injunctive relief is properly implemented, and (iii) a quarterly report setting forth information relevant to the determination of the effectiveness of the programs described in (A) through (D), above;

F. An Order placing or restoring Plaintiffs into those jobs they would now be occupying, but for Defendants' discriminatory and retaliatory policies, practices or procedures;

G. An Order directing Defendants to adjust the wage rates and benefits for Plaintiffs to the level that they would be enjoying but for the Defendants' discriminatory and retaliatory policies, practices and/or procedures;

H. An award of back pay, front pay, lost benefits, preferential rights to jobs and other damages for lost compensation and job benefits suffered by the Plaintiffs to be determined at trial;

I. Any other appropriate equitable relief to Plaintiffs;

J. An award of compensatory, nominal and punitive damages to Plaintiffs;

K. An award of litigation costs and expenses, including reasonable attorneys' fees, to the Plaintiffs;

L. Pre-judgment interest;

M. Such other and further relief as the Court may deem just and proper; and

N. Retention of jurisdiction by the Court until such time as the Court is satisfied that the Defendants have remedied the practices complained of herein and are determined to be in full compliance with the law.

Respectfully submitted,

*/s/ Brian Sanford*
Brian Sanford
Texas Bar No. 17630700
bsanford@sanfordfirm.com
David Norris
Texas Bar No. 24060934
dnorris@sanfordfirm.com
Elizabeth "BB" Sanford
Texas Bar No. 24100618
esanford@sanfordfirm.com

**THE SANFORD FIRM**
1910 Pacific Ave., Suite 15400
Dallas, TX 75201
Ph: (214) 717-6653
Fax: (214) 919-0113

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document has been served via electronic filing on December 11, 2020, to counsel of record.

*/s/ Brian P. Sanford*