UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JOSHUA YARBROUGH, ET AL., | § | |
| *Plaintiffs*, | § | |
| | § | CIVIL NO. 4:19-CV-905-SDJ |
| vs. | § | |
| | § | |
| GLOW NETWORKS, INC., | § | |
| *Defendant.* | § | |

PLAINTIFFS' REPLY IN SUPPORT
OF MOTION FOR REASONABLE FEES AND COSTS

The prevailing plaintiffs agree that 22.50 hours (totaling $15,210) should be excluded,

but otherwise their motion should be granted. The requested amount is a small fraction of the

plaintiffs' overall success, due in large part to the efficiency of litigating so many claims in one

suit. A revised proposed order is attached.

A.      **The Hourly-Rate Component of the Lodestar**

The defendant opposes the requested rates but without testimony to counter the numerous

declarations supporting them. "Generally, the reasonable hourly rate for a particular community

is established through affidavits of other attorneys practicing there," *Tollett v. City of Kemah*, 285

F.3d 357, 368 (5th Cir.), *cert. denied*, 537 U.S. 883, 123 S. Ct. 105, 154 L. Ed. 2d 141 (2002) ,

which is consistent with the Supreme Court's opinion in *Blum v. Stenson*:

> [T]he burden is on the fee applicant to produce satisfactory evidence—in addition
> to the attorney's own affidavits—that the requested rates are in line with those
> prevailing in the community for similar services by lawyers of reasonably
> comparable skill, experience, and reputation.

465 U.S. 886, 895 n.11, 104 S. Ct. 1541, 1547 n.11, 79 L. Ed. 2d 891 (1984).

The defendant could have submitted declarations, too, but instead posits that the Court

may determine rates "'either with or without the aid of testimony of witnesses as to value'" (Doc.

1

170 at 9 (quoting *Weeks v. S. Bell Tel. & Tel. Co.*, 467 F.2d 95, 98 (5th Cir. 1972)), by which it

apparently means the Court can disregard the plaintiffs' evidence. This would level the field, but

*Blum* would not have noted a fee movant's "burden" to produce evidence "in addition to the

attorney's own affidavits," and *Tollett* would not have mentioned "affidavits of other attorneys,"

if these could be ignored completely. A more accurate statement is that an "'hourly fee awarded

must be supported by the record; the district court may not simply rely on its own experience in

the relevant legal market to set a reasonable hourly billing rate.'" *McLain v. Lufkin Indus.*, 649

F.3d 374, 383 (5th Cir.), *cert. denied*, 565 U.S. 1036, 132 S. Ct. 589, 181 L. Ed. 2d 423 (2011).

The defendant also points in a footnote to the State Bar of Texas's 2015 HOURLY RATE

FACT SHEET (Doc. 170 at 10 n.3). Relegating the FACT SHEET to a footnote is appropriate

because the State Bar itself disclaims its usefulness for ruling on fee motions:

> In order to streamline the survey, hourly rate information is no longer collected.
> Past hourly rate reports were not designed for nor intended to be used for setting
> appropriate attorney fees. Other factors should be considered in determining
> attorney hourly rate fees that are outside the scope of these reports.[1]

Judge Montalvo in *Diocesan Migrant & Refugee Servs., Inc. v. U.S. Immig. & Customs

Enforcement* rejected reliance on the FACT SHEET in part because of that disclaimer. 2021 WL

289548, at *12 (W.D. Tex. Jan. 28, 2021) ("[t]ellingly, the Texas Bar itself warns against using

the Fact Sheet to set attorney fees"). Many rulings have relied on the FACT SHEET, but apparently

none have done so while taking into consideration the State Bar's disclaimer.

That disclaimer is not empty verbiage: courts have acknowledged the FACT SHEET to be

unreliable. *See*, *e.g.*, *Diocesan Migrant*, 2021 WL 289548 (favorably citing expert statistician: it

---

[1] State Bar of Texas, Demographic & Economic Trends, *available at*
https://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends
(last visited July 6, 2022). A copy of is attached as Exhibit 1-A.

"suffered from the fatal defects of a limited sample size, selection bias, and suboptimal methodology," and "does not reliably reflect the hourly rates of attorneys in Texas") (the report is attached as Exh. 1-B); *Miniex v. Houston Hous. Auth.*, 2019 WL 4920646, at *4 (S.D. Tex. Sept. 13, 2019) ("[t]he Court is unpersuaded that the median rates for labor and employment lawyers in the 2015 SBOT survey is a reliable gauge for reasonable hourly rates").

The defendant cites rates in ten employment cases in the Eastern and Northern Districts of Texas (Doc. 170 at 10-11), but none is a reliable guide. One leaned heavily on the FACT SHEET and dealt with rates in Tyler;[2] two dealt with other dissimilar markets (one in 2009);[3] four dealt with simple matters that would not justify a premium rate.[4] Two others are distinguishable for more case-specific reasons (one in 2010),[5] and one based rates on a decision from 2015.[6] Every

---

[2] *Stanton v. Jarvis Christian Coll.*, 2020 WL 5269439, at *6 (E.D. Tex.–Tyler Div. Aug. 27, 2020).

[3] *Fisher v. Lufkin Indus., Inc.*, 2018 WL 99960 (E.D. Tex.–Marshal Div. Feb. 20, 2018); *Lewallen v. City of Beaumont*, 2009 WL 2175637 (E.D. Tex.–Beaumont Div. July 20, 2009).

[4] *Moctezuma v. Islas*, 2020 WL 3087136, at *3 (E.D. Tex.–Sherman Div. May 7, 2020) (enforcement of a settlement agreement; 15.80 hours); *Vaughn v. Neb. Furniture Mart*, LLC, 2020 WL 1695695, at *7 (N.D. Tex.–Dallas Div. March 12, 2020) (proving damages to obtaining a default judgment; 20 hours); *Stancu v. Hyatt Corp./Hyatt Regency*, Dallas, 2018 WL 5084912, at *1 (N.D. Tex.–Dallas Div. Oct. 18, 2018) (opposing *pro se* plaintiff's motion to compel); *Castro v. Precision Demolition LLC*, 2017 WL 6381742, at *1 (N.D. Tex.–Dallas Div. Dec. 14, 2017) (unpaid overtime in the amount of $608.85, plus liquidated damages in the same amount and post-judgment interest).

[5] *Vasallo v. Goodman Networks, Inc.*, 2016 WL 6037847, at *4 & n.3 (E.D. Tex.–Sherman Div. Oct. 14, 2016) (court approved the hourly rates as part of the parties' settlement agreement of a conditionally certified FLSA collective action); *Giesler v. Ruiz Food Prods., Inc.*, 2010 WL 11530946, at *2 (E.D. Tex.–Sherman Div. March 2, 2010) (movant requested $350/hour and defendant did not oppose, so there is no discussion of what would be reasonable or indication that $350/hour is a market maximum).

[6] *Aguayo v. Bassam Odeh, Inc.*, 2016 WL 7178967, at *16 (N.D. Tex.–Dallas Div. Dec. 8, 2016) (using 2015 rates because "[n]ot so much has changed ... to warrant rate hikes"; citing *Olibas v. Native Oilfield Servs., LLC*, 104 F. Supp. 3d 791, 810 (N.D. Tex.–Dallas Div. 2015)).

lawyer and every case is distinguishable in one way or another, so the Court's focus should be on identifying a reasonable *range*. The plaintiffs' evidence is far more effective than the defendants' list of ten cases at giving the Court the information it needs—Mr. Wiley's declaration cites about 48 cases form the Eastern District and 76 from the Northern District[7]—to determine whether the requested rates fall comfortably within a range of reasonableness.

The defendant writes that "[p]laintiffs rely heavily on *Crane* .. as support for their high hourly rates." (Doc. 170 at 11-12.) Actually, their motion cited it for the comparability of the Sherman and Dallas markets (*see supra* note 7), not for specific rates, even though many were higher than are requested here: $715/hour to $925/hour. The defendant then describes *Crane* as "complex" by nature while this case was complex because the plaintiffs sued in a large number; otherwise, it was "garden variety." (Doc. 170 at 11-12.) That is disingenuous: if the plaintiffs had sued separately, the defendant would probably have sought consolidation because of the efficiency and cost-savings. In any event, the relevant *Johnson* factor asks whether a case was complex, not how it got that way. And it is certainly true that this 10-plaintiff case was complex. In *Crane*, the single successful claim (breach of contract with respect to restricted stock units, 2022 WL 403291, at *8[8]) appears to have been far simpler. It required no knowledge or application of the enormous body of law concerning how a retaliation plaintiff can show the pretextuality of an employer's proffered reason for taking an adverse action.

---

[7] "[T]he Dallas-Fort Worth legal market can be an appropriate guide for determining the reasonableness of rates" in the Sherman Division. (Doc. 147 at 5) (citing *Crane v. Rave Rest. Grp.*, 2022 WL 403291, at *5 n.5 (E.D. Tex.–Sherman Div., Feb. 9, 2022) (Mazzant, J.). The defendant cites no contrary authority.

[8] The plaintiff brought numerous other claims, but they all failed pre-trial or at trial. 2022 WL 403291, at *8. Whether any of those unsuccessful claims was more or less complex than the single successful claim was, presumably, irrelevant to Judge Mazzant's analysis.

The defendant also argues that Brian Sanford's and David Norris's fee awards of $350/hour and $200/hour, respectively, in *Williams v. Shinseki*, 2013 WL 1875055 (N.D. Tex.–Dallas Div. May 6, 2013), should simply be adjusted upward for inflation (Doc. 170 at 6), thus disregarding increases in their "skill, experience, and reputation" (*see supra* at 1, quoting *Blum*, 465 U.S. at  895 n.11). It presents no evidence these have remained static since 2013.

### B.    The Hours Component of the Lodestar

Defendant's opposition is organized into six tables, each discussed below.

#### 1.    Voluntarily Dismissed Claims (Doc. 170 at 14)

"[T]he class claims [eliminated at Doc. 25 at 3 and Doc. 37] were closely connected with the successful claims of the ten prevailing plaintiffs" (a class action does not change the claims or the substantive law), but Mr. Sanford eliminated time "specifically connected with the class claims" (Doc. 147-1 at 9, ¶ 23.b), i.e., time in connection with the only motion to dismiss aimed solely at the various class claims (Doc. 18, filed on April 8, 2020). All of the time in this table (with one exception) involves *earlier* motion practice that was not aimed solely at the various class claims. These objections should be overruled. The single exception is an entry dated 7/19/21 for work in connection with the plaintiffs' claim for lost wages. Plaintiffs agree this time (1.80 hours (BBS)) should be excluded.

#### 2.    CSS Corp./SlashSupport, Inc. (Doc. 170 at 14)

The Court granted a pre-verdict motion for judgment as a matter of law in favor of SlashSupport, Inc., which had been incorrectly identified as CSS Corp. (Doc. 104; Doc. 115.) But the fact that CSS prevailed does not mean the remaining defendant is not liable for the time spent pursuing discovery from it. *Cobb v. Miller*, 818 F.2d 1227, 1233 (5th Cir. 1987) (applying Seventh Circuit holding that "once a plaintiff succeeds against one defendant, he will have

5

achieved relief despite the fact that he did not recover against other defendants," and that "so long as the defendants from whom the plaintiff did not obtain relief were not named frivolously, the total time spent on the [interrelated] claim should be counted").[9] Defendant makes no showing the discovery about CSS listed in this table did not involve a claim interrelated with the ones against it, or that CSS was named frivolously. These objections should be overruled.

### 3.       Dismissed Plaintiffs (Doc. 170 at 15)

Plaintiffs acknowledge that some of these entries pertain to non-prevailing plaintiffs, and that it is reasonable to conclude from the imprecision of the rest (e.g., "[r]eviewed documents in preparation of depositions" (5/19/21 entry)) that they also so pertain. Plaintiffs agree this time (7.90 hours: 7.30 hours (BPS) + 0.60 hour (BBS)) should be excluded.

### 4.       The Motion for Partial Summary Judgment (Doc. 170 at 15-20)

The defendant would eliminate (or greatly reduce) all Phase 8 time because the motion was granted except in one very narrow respect. But courts have rejected the notion that a plaintiff who prevailed in the end cannot recover time for motions he lost along the way simply because he lost them. The correct question is whether opposing the defendant's motion was unreasonable,[10] but the defendant does not address it. This objection should be overruled.

---

[9] *See also Gruttemeyer v. Transit Auth.*, 31 F.4th 638, 650 (8th Cir. 2022) (claims brought against different defendants may arise from a common core of facts; district court did not abuse its discretion in finding that they did, such that time spent pursuing claims against the prevailing defendant was recoverable from the defendant who lost; citing *McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2009)). This is simply an application of the general rule, cited in the plaintiffs' motion, that time spent on a non-prevailing claim is recoverable if interrelated with a prevailing claim. (Doc. 147 at 4-5, quoting *Hensley v. Eckerhart*, 461 U.S. 423, 435 & 440, 103 S. Ct. 1933, 1940 & 1943, 76 L. Ed. 2d 40 (1983)).

[10] *See*, *e.g.*, *Miller v. Raytheon Co.*, 2011 WL 13234115, at *4 (N.D. Tex. Sept. 15, 2011) (ADEA fee award: "Although Plaintiff's argument did not ultimately succeed, Defendant provides no basis for the theory that they were precluded from making it. Accordingly, the Court
(continued...)

### 5.      "Vague Entries" (Doc. 170 at 17-18)

#### a.      May 2020 Entries Regarding "Potential Plaintiffs"

"Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended," *Hensley*, 461 U.S. at 437, so context is key.[11] These entries are from shortly before the motion for intervention. (Doc. 28.) Plaintiffs acknowledge that some time was probably spent conferring with four of the intervenors who did not prevail. Plaintiffs therefore agree it would be reasonable to eliminate one-third (10.80 hours ÷ 3 = 3.60 hours, consisting of 3.10 hours (BPS) + 0.50 hour (DBN)). As for defendant's suggestion that some additional time may have been spent conferring with people who did not intervene, Mr. Sanford has provided a supplemental declaration attesting that all of these "potential plaintiffs" either intervened or became witnesses or provided information useful for the prevailing claims. (Exh. 1 at ¶ 5.)

---

[10](...continued)
will allow Plaintiff to recover fees for time associated with the argument on damage caps."), *aff'd*, 716 F.3d 138 (5th Cir. 2013); *Bray v. Fort Dearborn Life Ins. Co.*, 2007 WL 9711577, at *1 (N.D. Tex. Aug. 6, 2007) (ERISA fee award: "While Bray did not obtain all the relief requested in the motions, the Court cannot find that Bray's positions were frivolous or that the time spent on those motions was unreasonable or unnecessary. Bray's attorneys 'are obligated to represent their clients zealously, and the Court will not second-guess every unsuccessful strategic decision of plaintiff's counsel during this litigation.'"); *Schlieper v. City of Wichita Falls*, 2003 WL 21355982, at *4 (N.D. Tex. June 6, 2003) (42 U.S.C. § 1988 fee award: "[The court need not] vet the pre-trial and trial strategies and trial work to determine which strategies and motions worked and which ones did not work, which ones were winners and which ones were losers. Plaintiff has not established that any of the attorneys purposely ran up the time on frivolous matters. Neither motions for summary judgment nor motions for directed verdict are unusual in civil rights cases of this nature. They are part and parcel of conscientious and vigorous representation.").

[11] *Olibas*, 104 F. Supp. 3d at  812 (looking at "the more detailed entries surrounding them, and their dates of entry, which indicates the point in the proceedings in which the particular services were rendered"; "supposedly duplicative entries … relate to matters that counsel would understandably spend multiple days on").

### b.      The Remaining Entries

● *March 17-18, 2021 entries regarding discovery responses:* Again, context is key.

Surrounding entries from March 12 to March 18 explicitly cover preparing discovery responses

for Michael Brown, Paul Tijani, and Peter Tijani (Doc. 147-1 at 36-37), all of whom prevailed.

The defendant has cherry-picked entries that do not contain an explicit reference to suggest they

might pertain to non-prevailing plaintiffs. These objections should be overruled.

● *April 1, 2021-May 3, 2021 entries:* Plaintiffs acknowledge the surrounding entries do

not clarify whether these entries pertain to a plaintiff who prevailed, and agree this time (7.60

hours: 0.50 hour (BPS) + 5.30 hours (DBN) + 1.80 hours (BBS)) should be excluded.

● *May 11, 2021 entry:* This entry concerns Mr. Sanford's meeting with clients about their

upcoming depositions (as well as Mr. Sanford's preparation for the meeting). The entry does not

name the clients, but the defendant knows it served notices on May 5 for depositions of

prevailing plaintiffs Matthew Loffland and Michael Brown (as well as non-prevailing plaintiffs

Lee Green, Rukevwe Ologban, and Brett Samuels). Because Mr. Sanford met (and prepared to

meet) with two prevailing plaintiffs, the fact that three non-prevailing plaintiffs were also present

at the meeting is irrelevant. This objection should be overruled.

● *July 13, 2021 entries:* Mr. Sanford recorded time for "Emails with clients re

mediation." But there is no reason to conclude Mr. Sanford was emailing about mediation—a

subject of interest to all the clients—only to the clients who later did not prevail. There is also no

reason to conclude the two entries (one for 0.20 and one for 0.30) are duplicates rather than an

accurate record of two phases of an email exchange. This objection should be overruled.

● *August 30, 2021 entry:* Plaintiffs acknowledge the surrounding entries do not clarify

which of them this entry ("[c]orrespond with 6 clients regarding their deposition changes")

pertains to. Obviously, at least two of the six must have prevailed, but since the entry is only for

0.50 hour, plaintiffs will agree that this time (0.50 hour (BBS)) should be excluded.

### 6.       Overcharging (Doc. 170 at 18-19)

The defendant's last table covers entries that, it contends, reflect tasks that were either

clerical and should not have been charged at all, or that were legal work but did not require Mr.

Sanford. In reality, most of the entries in this table show Mr. Sanford doing precisely what the

lead attorney in a case should do: read the Court's orders. These objections should be overruled.

Three entries (two on January 20, 2020, and one on January 21) involve discussions with

a process server. A fourth entry (on May 24, 2021) involves research about contacting a witness

and conferring with a process server about the witness. Plaintiffs do not concede any of this was

clerical, but agree to exclude it (1.10 hours: 0.90 (BPS) + 0.20 (DBN)).

### C.       Costs and Post-Judgment Interest

The defendant has not challenged any of the plaintiffs' costs, or the availability of post-

judgment interest on the award of fees and costs pursuant to 28 U.S.C. § 1961. These categories

should be awarded as requested.

### D.       Further Proceedings

Since the motion, plaintiffs' attorneys have expended additional time in opposing the

defendant's post-judgment motion (Doc. 150; Doc. 171), and in preparing this reply. Plaintiffs

will file a supplemental motion to account for this time. (*See* Doc. 147-1 at 10, ¶ 28.)

### Conclusion

The Court should award fees, costs, and postjudgment interest as set forth below:

a.       A fee of $595,530, detailed as follows:

| Lawyer | Hours | Rate | Lodestar Fee |
|---|---|---|---|
| Brian P. Sanford | 431.85<br>- 11.80<br>420.05 | $850 | $357,042.50 |
| Elizabeth "BB" Sanford | 384.55<br>- 4.70<br>379.85 | $400 | $151,940.00 |
| David B. Norris | 110.70<br>- 6.00<br>104.70 | $550 | $57,585.00 |
| Amy E. Gibson | 4.80 | $650 | $3,120.00 |
| David L. Wiley | 23.50 | $650 | $15,275.00 |
| James D. Sanford | 7.65 | $550 | $4,207.50 |
| Robert E. McKnight, Jr. | 10.40 | $650 | $6,760.00 |
| **Lodestar Fee** | 973.45 | | $595,930.00 |

b.      Costs (including those in the bill of costs) in the total amount of $10,280.13.

c.      Postjudgment interest on $606,210.13 from April 18, 2022.

Respectfully submitted,

*/s/ Brian P. Sanford*
Brian P. Sanford
Texas Bar No. 17630700
Elizabeth "BB" Sanford
Texas Bar No. 24100618

**THE SANFORD FIRM**
1910 Pacific Ave., Suite 15400
Dallas, Texas 75201
Telephone: (214) 717-6653
Facsimile: (214) 919-0113
bsanford@sanfordfirm.com
esanford@sanfordfirm.com

*/s/ Robert E. McKnight, Jr.*
Robert E. McKnight, Jr.
Texas Bar No. 24051839
Marek, Griffin & Knaupp

10

203 N. Liberty Street
Victoria, Texas 77901
Telephone: (361) 573-5500
Facsimile: (361) 573-5040
mcknightr@lawmgk.com

**ATTORNEYS FOR PLAINTIFFS
JOSHUA YARBROUGH, ET AL.**

## CERTIFICATE OF SERVICE

On July 11, 2022, I served the foregoing document with all exhibits on all counsel of record via the Court's electronic filing system.

/s/ *Brian P. Sanford*
Brian P. Sanford