# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 16, 2025

Lyle W. Cayce
Clerk

———————————

No. 24-40421

———————————

JOSHUA YARBROUGH,
*Individually and on Behalf of Others Similarly Situated*;
MATT LOFLAND, *Individually and on Behalf of Others Similarly Situated*;
JOSHUA WALKER; BRANDON PRICE; MICHAEL BROWN;
BRETT SAMUELS; STERLING VICKS; ADAWALE ASHIRU;
OSASU WILLIAM SAIGHEYISI; HAROM PRINGLE;
RUKEVWE OLOGBAN; PETER TIJANI; LEE GREEN; PAUL TIJANI,

*Plaintiffs—Appellants*,

*versus*

SLASHSUPPORT, INCORPORATED;
GLOW NETWORKS, INCORPORATED,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:19-CV-905

———————————————————————

Before KING, SMITH, and DOUGLAS, *Circuit Judges*.

JERRY E. SMITH, *Circuit Judge*:

Plaintiffs sued their former employer, Glow Networks, Incorporated, and its parent company, SlashSupport, Incorporated, under 42 U.S.C. § 1981 for discriminating based on race, maintaining a hostile work environment,

No. 24-40421

and retaliating for opposing discrimination. One plaintiff likened his experience to "being raped"; another called it the "new slavery."

To Glow, the district court granted summary judgment, judgment as a matter of law ("JMOL"), or a new trial on every claim. The court also granted JMOL to SlashSupport on all claims because it was not an "integrated enterprise" with Glow that could be liable for Glow's employment decisions. Additionally, the court excluded the testimony of four witnesses. Except for a summary judgment based on since-abrogated precedent, we affirm.

## I.

Glow is an IT company. "All plaintiffs other than Lofland, who was a team lead, were either Tier 1 or Tier 2 employees. . . . Tier 1 employees conducted integrations, while Tier 2 employees," who were more knowledgeable, supported Tier 1 employees. They worked on a "Remote Integration and Testing Center" in 2017 and 2018; some returned to work for Glow in 2019 and 2020. Glow was contracted to upgrade Nokia's cell sites from 4G to 5G technology. Mohammad Silat and Sandeep Pauddar were managers on the project. *Yarbrough v. CSS Corp.*, No. 4:19-CV-905, 2022 WL 326141, at *1 (E.D. Tex. Feb. 2, 2022).

> With the exception of Matt Lofland, who is Caucasian, all Plaintiffs are Black former employees who contend that Glow discriminated against them based on their race. They claim discrimination based on both tangible actions, such as terminations and denials of promotions, and on the alleged creation of a hostile work environment. Plaintiffs Lofland, Adawale Ashiru, Brett Samuels, Paul Tijani, Peter Tijani, Joshua Walker, and Osasu William Aigheyisi additionally allege that Glow retaliated against them for reporting and opposing race discrimination.

*Id.*

2

No. 24-40421

The district court granted summary judgment to Glow on all hostile work environment claims. It also granted Glow summary judgment on the discrimination claims asserted by Green, Vicks, Samuels, Price, and Ologban, and the retaliation claims asserted by Samuels, because they had not produced evidence that they had experienced an ultimate employment decision, as required under this court's precedent at the time.

The case was tried to a jury. Much of the plaintiffs' evidence addressed not the complained-of employment actions that they say were discriminatory, but workplace policies that allegedly targeted black employees. For instance, they testified that black employees were required to sit in camera-monitored rooms; were not allowed to take breaks as often as other employees; were singled out for minor workplace infractions; and were not allowed to use cellphones.

The court granted JMOL to Glow under Federal Rule of Civil Procedure 50(a) on Lofland's and Yarbrough's constructive discharge-based claims, explaining that no reasonable jury could find that their demotions would have compelled reasonable employees to resign.

A jury found for the nine remaining plaintiffs on the discrimination and retaliation claims and awarded each plaintiff $3 million in emotional distress damages and $4 million in punitive damages.

Under Rule 50(b), the court granted JMOL on all claims to SlashSupport, concluding that there was no factual basis from which a reasonable jury could conclude that SlashSupport was plaintiffs' employer. The court granted JMOL to Glow on the remaining discrimination claims, finding insufficient evidence to sustain the jury's verdict. On the retaliation claims, it granted JMOL to Glow for claims asserted by Lofland and Paul Tijani, finding that neither had produced evidence that he had opposed race discrimination.

3

No. 24-40421

The court granted a new trial to Glow on the retaliation claims asserted by Peter Tijani and Aigheyisi, finding that the verdicts were contrary to the great weight of the evidence.

## II.

We review a JMOL or summary judgment de novo. *Skidmore v. Precision Printing & Pkg., Inc.*, 188 F.3d 606, 612 (5th Cir. 1999) (JMOL); *Boyd v. State Farm Ins. Cos.*, 158 F.3d 326, 328 (5th Cir. 1998) (summary judgment). We review a ruling on a new-trial motion for abuse of discretion but scrutinize a grant more closely than a denial. *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982). We review the exclusion of evidence for abuse of discretion. *Cruz v. Cervantez*, 96 F.4th 806, 814 (5th Cir. 2024).

## III.

## A.

The district court granted summary judgment to Glow on the discrimination claims of Green, Vicks, Samuels, Price,[1] and Ologban and on the retaliation claim of Samuels because none could show an "ultimate employment decision" like a constructive discharge. For either type of claim, a plaintiff must show an adverse employment action, which, at the time of the summary judgment, meant an "ultimate employment decision." *See Hamilton v. Dall. Cnty.*, 79 F.4th 494, 500 (5th Cir. 2023) (en banc).

In *Hamilton*, however, the en banc court held that adverse employment actions under Title VII are not limited to ultimate employment decisions. *Id.* at 506. Accordingly, as both parties request, we vacate the

---

[1] The court granted summary judgment to Glow on Price's discrimination claim based on his 2018 resignation. He also claimed discrimination with regard to his 2019 termination; that claim was tried, after which the district court granted JMOL to Glow, which Price also appeals.

4

No. 24-40421

summary judgment on those claims and remand for further proceedings consistent with *Hamilton*.

## B.

The court granted summary judgment to Glow on the hostile work environment claims. We affirm.

A racial hostile work environment plaintiff must show that he

(1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on his [race]; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Johnson v. Pride Indus., Inc.*, 7 F.4th 392, 399–400 (5th Cir. 2021).

Plaintiffs offered no competent summary judgment evidence that any of the complained-of conduct was based on race. They cited break policies; no-cellphone policies; seating charts; training policies; work assignments; and overtime policies. They testified that managers were "manipulative" and "condescending" and would "bully" them. But the only links to race were conclusory assertions that Glow singled out black employees for enforcement. *See Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (conclusory statements insufficient). As evidence of racial slurs and condescension, plaintiffs proffered: "You know, a lot but I can't remember much. A lot happens." With "no evidence regarding who said what or how often," that testimony is also insufficient. *Bye v. MGM Resorts, Int'l, Inc.*, 49 F.4th 918, 924 (5th Cir. 2022). One black employee testified that Pauddar asked him to clean the kitchen. Again, there was no evidence that Pauddar's request was based on race, and "allegations of . . . improper work requests . . . do not constitute actionable" harassment. *Id.* at 923.

No. 24-40421

C.

We affirm the Rule 50(a) JMOL to Glow on Yarbrough's and Lofland's constructive discharge-based discrimination and retaliation claims. Each must show that "a reasonable party in his shoes would have felt compelled to resign." *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 444 (5th Cir. 2011). They claim that they were constructively discharged when Glow reassigned them from higher-level QA work to Tier 1 engineer duties. Not so. Glow did so because the client didn't need so many QA staff. The new role, "though subjectively undesirable" to Lofland and Yarbrough, was "not inherently demeaning, especially when it was offered as part of a . . . neutral reorganization." *Jurgens v. EEOC*, 903 F.2d 386, 392 (5th Cir. 1990). Nor did Glow reduce their salaries or badger them into resigning. *Dediol*, 655 F.3d at 444. They also cite the "discrimination" against others, but we do not consider things that they "did not personally experience." *Septimus v. Univ. of Hous.*, 399 F.3d 601, 612 (5th Cir. 2005).

D.

After the jury returned a verdict for nine plaintiffs on their discrimination claims, the district court granted JMOL to Glow under Rule 50(b). We affirm.

At the JMOL stage, we disregard the *McDonnell Douglas* framework and ask "whether the record contains sufficient evidence to support the jury's ultimate findings"[2] that Glow would not have fired, laid off, denied promotion to, or demoted the plaintiffs "but for [their] race."[3]

---

[2] *Bryant v. Compass Grp. USA, Inc.*, 413 F.3d 471, 475–76 (5th Cir. 2005).

[3] The jury was instructed on the but-for standard, which the plaintiffs do not contest. *See Williams v. Waste Mgmt., Inc.*, 818 F. App'x 315, 325 (5th Cir. 2020) (citing *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 332 (2020)).

No. 24-40421

To show that race caused the challenged employment actions, the plaintiffs testified about workplace policies that, they said, were disparately enforced against black employees: the tardiness policy; the no-cellphone policy; the no-sleeping-on-the-job policy; the overtime policy; the break policy. They complained that they were assigned more work than white employees and that only black employees were forced to sit under cameras.

Even if those anecdotes were relevant to the complained-of actions, they are not evidence of discrimination. Aside from conclusory and unsubstantiated assertions, there was no evidence that black employees were treated differently. For instance, pressed for the name of a non-black employee who had received a lighter workload than black employees, they cited "a guy named Sean," a white man who had "been there a long time." But "[t]his extremely small sample hardly establishes discrimination." *Travis v. Bd. of Regents of the Univ. of Tex. Sys.*, 122 F.3d 259, 265 (5th Cir. 1997). And apart from feelings of discrimination, there was no evidence that any different treatment was race-based. Feelings are not competent evidence, and the plaintiffs cannot "simply rel[y] on the fact that the other employees are" not black. *Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999); *Bryant*, 413 F.3d at 477.

The plaintiffs focus on the company's assigned-seating policy, which Glow instituted, they say, to monitor black employees using security cameras. None of the non-conclusory testimony supported that theory. When seating had been free-for-all, employees self-segregated by race, and black employees generally sat in rooms without cameras. After a visiting client complained about apparent segregation, the company assigned seating to desegregate the employees; some black employees were thus moved to rooms that had cameras. And as Paul Tijani testified, in the camera-monitored room to which he was moved, "there were a lot of other different races, ethnicities."

7

No. 24-40421

Nor was their evidence about the challenged employment actions sufficient to survive JMOL. Yarbrough, for example, presented no evidence that he was discriminatorily demoted. Though he was hired as a Tier 2 engineer in 2017 and was promoted to lead the QA team within six months, Glow later assigned him to Tier 1 duties but didn't change his pay or title. Pauddar explained that, as the contract winded down and as other employees left, Glow needed experienced employees such as Yarbrough to handle projects that were more complicated. Yarbrough's only evidence of discrimination is that an Asian employee took over QA duties. But he cannot "simply rel[y] on the fact that the other employees are" not black. *See Bryant*, 413 F.3d at 477.

The court likewise properly granted JMOL on Walker's claim of discriminatory denial of promotion. Pauddar testified that Walker's skill was not yet at the higher level. Besides Yarbrough's subjective belief that Walker should have been promoted and Walker's own assertion that he was working harder than others, Walker provided no evidence rebutting Pauddar's reason or showing that Glow denied his promotion based on race. Subjective beliefs are insufficient, *Bauer*, 169 F.3d at 967, and we do not judge the company's nondiscriminatory promotion criteria, however incorrect they may be, *Travis*, 122 F.3d at 264.

Ashiru, Paul and Peter Tijani, and Aigheyisi were fired for poor performance, poor work ethic, poor communication skills, unprofessional behavior, and threatening language. They played on their phones and were absent when field technicians needed to reach them. They provided no evidence that those reasons were pretextual or that they wouldn't have been fired but for their race. *See Bryant*, 413 F.3d at 475–76.

Price admits that he was terminated when he was "unable to perform [his] job duties," which required him to spend his own money to live in Los

8

No. 24-40421

Angeles and to use his own vehicle and gas. That had nothing to do with race.

Harom Pringle and Michael Brown were laid off. They rely on a comment by Debbie Cahoon, an HR manager, who allegedly said, "Don't lay off any white people." That "stray remark" is not "probative of [Glow's] discriminatory intent." *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 304 (5th Cir. 2000). There was no evidence that the comment influenced Pauddar, the layoff decisionmaker, who responded, "Debbie, that is racist. . . . I am not making any decisions . . . based on [whether] somebody is white or black, or anything." Indeed, after Cahoon's comment, the new layoff list—based on reverse seniority—had more white people than the old one. They point to no other evidence that race caused their layoffs.

We accordingly affirm the JMOL on these claims.

### E.

The district court granted JMOL under Rule 50(b) on retaliation claims by Lofland and Paul Tijani. We affirm because neither plaintiff produced evidence of his protected activity.

A retaliation "plaintiff must prove by a preponderance of the evidence that: (i) he engaged in a protected activity; (ii) an adverse employment action occurred; and (iii) a causal link exists between the protected activity and the adverse employment action." *Wantou*, 23 F.4th at 436–37. A protected activity is either (1) opposing race discrimination or (2) participating "in an investigation, proceeding, or hearing under this subchapter." *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2016). To prove opposition to race discrimination, the employee must show "that she had at least a 'reasonable belief' that the practices she opposed were unlawful." *Long v. Eastfield Coll.*, 88 F.3d 300, 305 (5th Cir. 1996). Again, the *McDonnell Douglas* framework does not apply at JMOL; "we inquire whether the record contains sufficient evidence to support the jury's ultimate findings" "that the adverse

No. 24-40421

employment action would not have occurred but for the protected conduct." *Bryant*, 413 F.3d at 475–76; *Wantou*, 23 F.4th at 437.

None of the three conversations to which Lofland points constitutes protected activity. In the first, he told Pauddar that "the way [management is] doing things just doesn't seem right, and it seems like there's no account-ability[.] . . . I was wondering if there was anything we can do." But his complaints did not mention race; in that conversation, *Pauddar*—not Lofland—expressed discrimination concerns. In the second conversation, Lofland testified that he told Pauddar that "there may be some type of protest or petition happening." That was also not a complaint of racial discrimin-ation; he was not part of the "protest" and brought it up "just to get [Paud-dar's] reaction" to relay back to his protesting friends. Third, he complained that Mohammad Silat was reporting "a lot of employees" for violating work-place policies while Silat himself "constantly had his feet up and leaning back on the desk." That was a complaint of hypocrisy, not discrimination.

Paul Tijani's assertion of protected activity also misses the mark. He complained of "discrimination," but no reasonable plaintiff could believe that the complained-of conduct was discrimination. *Long*, 88 F.3d at 305. He bemoaned, *inter alia*, that Silat ignored him, "saying he was busy" but "sit-ting with his legs crossed on the desk"; Silat gave him incorrect assignments; Sandeep "threatened to fire [him]" for making a mistake that later turned out to be someone else's mistake; management forbade him from sitting next to his twin brother; Silat didn't "like" him or his brother; and Silat bragged that he was "an asshole" and was "about to be even more of an asshole." None of those complaints had to do with race.

Because there was no evidence that either plaintiff engaged in pro-tected activity, we affirm the JMOL.

10

No. 24-40421

### F.

The district court granted a new trial to Glow on Peter Tijani's and Aigheyisi's retaliation claims. We affirm because the verdict is against the great weight of the evidence.

Reviewing for abuse of discretion, we "consider three factors that militate against new trials and require a particularly searching review of the evidence: simplicity of the issues, the extent to which the evidence is in dispute, and the absence of any pernicious or undesirable occurrence at trial." *Shows*, 671 F.2d at 930. "When all three factors are present," we will not affirm the grant of a new trial unless "we are satisfied, independently, that the jury verdict was against the great weight of the evidence." *Id.* at 931.

Glow presented significant evidence of why it fired Peter: It put him on a performance improvement plan ("PIP") "for insubordination and threatening language/behavior" and for "unprofessional" behavior. He told a customer that he would only do half of the assignment and "erupted in angry outburst, cursing his Tier 2 and Team Lead over this, and wanted to leave early without completing the migration." The district court cited, and Peter does not address, video evidence showing a dispute between Peter and Pauddar: "I don't have to threaten you. I'm . . . big African chief, so I don't have to threaten you. I don't think you want to see me threaten you." Peter was unreachable when field technicians needed him. He also misplaced his laptop, which was a security issue because company laptops had "access to Verizon's network."

Overwhelming evidence also demonstrated that Glow fired Aigheyisi for misbehavior and poor work quality. Glow placed him on two PIPs. He slept on the job and frequently watched online videos. He "lack[ed] professionalism" and refused to acknowledge work assignments. Even after being warned, he continued refusing to acknowledge assignments. His exit report

11

listed performance evaluations of "Unsatisfactory" across the board and stated that he was fired on March 8, 2018, for playing Candy Crush during working hours.

To counter the company's evidence, the plaintiffs point only to the small gap between their complaints and their terminations. That is insufficient. *See Travis*, 122 F.3d at 266 (reversing judgment of retaliation where no evidence of retaliation besides timing of adverse action).

Because the verdict is against the great weight of the evidence, we affirm the grant of a new trial.

## G.

The district court granted JMOL to SlashSupport, Glow's parent company, finding no evidence from which a reasonable juror could conclude that SlashSupport was an "integrated enterprise" with Glow. We affirm.

"[S]uperficially distinct entities may be exposed to liability upon a finding that they represent a single, integrated enterprise: a single employer." *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983). We consider "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control," *id.*, but the second factor is the most important. *See Skidmore*, 188 F.3d at 617 (quoting *Trevino*, 701 F.2d at 404). We "focus[] almost exclusively on one question: which entity made the final decisions regarding employment matters relating to the person claiming discrimination?" *Id.*

Plaintiffs presented no evidence from which a reasonable jury could find SlashSupport and Glow to be an integrated enterprise. SlashSupport was not involved in firing or promoting employees or in contracting with clients for whom Glow employees worked; only Glow's VP could modify plaintiffs' employment agreements. *See id.* (finding no integrated enterprise

12

No. 24-40421

where subsidiary "hired, fired, promoted, and demoted its own employees without consulting" parent). Plaintiffs admit that Sandeep Pauddar—a Glow manager—was the "decisionmaker" for layoffs. Though plaintiffs claim that SlashSupport "installed a senior executive at Glow's head-quarters," they point to no evidence that the executive had anything to do with "the final decisions regarding [the] employment" of any plaintiff. *See id.*

We thus affirm the JMOL to SlashSupport.

## H.

We find no abuse of discretion in the exclusion of the testimony of four witnesses. Plaintiffs complain that those witnesses weren't allowed to testify about the discriminatory workplace policies and "persecut[ion]" and "harass[ment]" of black employees. As the district court concluded—and the plaintiffs acknowledged—other witnesses had already testified in detail about those topics. *See* FED. R. EVID. 403 (allowing district court to exclude "needlessly . . . cumulative evidence" and evidence that "wast[es] time").

\* \* \*

In summary: As for the discrimination claims asserted by Green, Vicks, Samuels, Price, and Ologban, and the retaliation claim brought by Samuels, the summary judgment is VACATED, and the case is REMANDED for further proceedings. Regarding those claims, we place no limitations on the matters that the court may consider and decide on remand. In all other respects, the judgment is AFFIRMED.

13